# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### PARKERSBURG DIVISION

| | |
|---|---|
| **TERESA GRACE FARROW,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **CIVIL ACTION NO. 6:13-22767** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Standing Order entered September 12, 2013 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings (Document Nos. 10 and 11.) and Plaintiff's Reply. (Document No. 12.)

The Plaintiff, Teresa Grace Farrow (hereinafter referred to as "Claimant"), filed an application for DIB on January 13, 2011 (protective filing date), alleging disability as of December 11, 2010, due to hearing problems, depression, high blood pressure, high cholesterol, fatigue and exhaustion, confusion and memory loss, joint pain, arthritis, and torn cartilage in the right knee. (Tr. at 23, 142-44, 181, 185.) The claims were denied initially and upon reconsideration. (Tr. at 73-74, 77-79, 89-91.) On July 27, 2011, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 92-93.) The hearing was held on September 6, 2012, before the Honorable Jon K. Johnson. (Tr. at 56-72.) By decision dated September 27, 2012, the ALJ determined that Claimant was not entitled to benefits. (Tr.

at 23-37.) The ALJ's decision became the final decision of the Commissioner on August 2, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 1-7.) Claimant filed the present action seeking judicial review of the administrative decision on September 10, 2013, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant,

considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she had not engaged in substantial gainful activity from her alleged onset date of December 11, 2010. (Tr. at 25, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from the severe impairments of "history of myocardial infarction, hypertension, hypercholesterolemia, hyperlipidemia, chronic back pain with mild degenerative disc disease, degenerative joint disease of the bilateral knees and obesity." (Tr. at 26, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 33, Finding No. 4.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform the full range of sedentary level work. (Tr. at 33, Finding No. 5.) At step four, the ALJ found that Claimant was capable of performing her past relevant work as a title abstractor. (Tr. at 37, Finding No. 6.) On this basis, benefits were denied. (Tr. at 37, Finding No. 7.)

Claimant's Background.

Claimant was born on April 28, 1948, and was 64 years old at the time of the administrative hearing, September 6, 2012. (Tr. at 61, 142.) Claimant had at least a high school education and was able to communicate in English. (Tr. at 63, 184, 186.) In the past, Claimant worked as a title abstractor. (Tr. at 37, 65, 186, 203-06.)

The Medical Record.

The undersigned has reviewed all the evidence of record, including the medical evidence of record, and will discuss it below as it relates to Claimant's arguments.

*Mental Impairments*:

The record contains treatment records from Dr. Frederic A. Humphrey, D.O., from October 18, 2004, through October 13, 2011, and February 18, 2011, through May 7, 2011. (Tr. at 30, 271-312,

3

348-51, 361-66.) The records in many instances are difficult to decipher, but reflect Claimant's treatment, in part, with Dr. Humphrey, for depression since 2005. (Id.)

On February 15, 2011, Dr. Sushil M. Sethi, M.D., conducted a consultative physical examination for determination of disability benefits. (Tr. at 30, 36, 313-19.) Claimant reported that her depression and mental issues had been treated at Heritage House until she switched to Dr. Humphrey, who had given her prescription medications. (Tr. at 30, 36, 314.) She reported that her mind "swings off and on." (Id.) Dr. Sethi noted that Claimant appeared to be quite well read on her conditions and that she had taken Citalopram prior to having problems and since she was 30 years old. (Id.) Dr. Humphrey however, had given her new medications. (Id.)

On February 18, 2011, Dr. Humphrey noted that Claimant was alert and oriented, and slept in excess of eight hours a night. (Tr. at 30, 289-90, 348-49, 361-62.)

Dr. Frank Bettoli, Ph.D., conducted a consultative psychological evaluation on March 14, 2011. (Tr. at 30-31, 328-33.) Claimant reported that she had been married and divorced twice and had two adult sons who were doing well, but did not have much contact with family. (Tr. at 30, 328.) She reported that she traveled with her poodle. (Id.) Claimant reported difficulty concentrating and some problems with memory. (Id.) She indicated a long job history that required a lot of travel and a lot of time on the job with varied responsibilities. (Id.) She stated that her work was very stressful, that she had stayed on the road for weeks, that she stayed exhausted, and that her work performance was flagging. (Id.) After her heart attack on the job, she decided she no longer could do the job and quit. (Id.) After quitting, Claimant reported that she struggled with depression and anxiety, but denied that either condition had been a problem lately. (Tr. at 30-31, 328) She reported that she felt better than when she was working. (Id.) She said her mood varied, but overall she felt well. (Id.)

On mental status exam, Dr. Bettoli observed that Claimant was friendly and cooperative, seemed to speak openly about her experiences, spoke clearly and coherently, was oriented fully, had an euthymic mood and a congruent and expressive affect, had a clear and logical thought process, and

4

had presented content relevant to the questions and situation at hand. (Tr. at 31, 330.) He noted no perceptual disturbances or suicidal and homicidal ideations, good insight and judgment, normal psychomotor behavior, adequate immediate memory, intact remote memory, normal persistence and pace, normal social functioning, and only moderately deficient recent memory and somewhat deficient concentration. (Tr. at 31, 330-31.) Dr. Bettoli diagnosed adjustment disorder with mixed anxiety and depressed mood, acute. (Tr. at 31, 331.) He opined that Claimant "seems to be doing fairly well at present and is expected to have some ups and downs with depression and anxiety. I do believe that her condition would significantly worsen if she were in a position where she had to resume some semblance of her former work occupation." (Tr. at 31, 332.)

On April 15, 2011, Dr. James W. Bartee, Ph.D., a reviewing state agency consultant, completed a form Psychiatric Review Technique on which he opined that Claimant's adjustment disorder with depressed mood and adjustment disorder with anxiety were not severe impairments. (Tr. at 31-32, 334-47.) He opined that Claimant had mild restriction of activities of daily living and mild difficulties in maintaining social functioning, concentration, persistence, or pace. (Tr. at 32, 344.) He further opined that Claimant had no episodes of decompensation each of extended duration. (Id.) He noted that Claimant was capable of performing substantial gainful activity on a sustained basis within any limits imposed by the physical residual functional capacity. (Tr. at 346.) On June 18, 2011, Dr. John Todd, Ph.D., a reviewing state agency consultant, reviewed the evidence in the file and affirmed Dr. Bartee's opinion as written. (Tr. at 32, 360.)

On October 10, 2011, Ms. Barbara Lott, FNP, at the Good Samaritan Clinic, observed that Claimant was alert and oriented. (Tr. at 31, 394.) Ms. Lott assessed alcohol abuse and depression. (Id.) On November 7, 2011, Claimant denied anxiety, depression, and hallucinations, and Ms. Lott again noted that she was alert and oriented. (Tr. at 31, 389-90.)

On March 23, 2012, Claimant requested to try Paxil as Celexa caused dry mouth and mouth sores. (Tr. at 449.) On May 2, 2012, Ms. Sandra Swisher, FNP, indicated that Claimant was taking

5

Citalopram for depression. (Tr. at 31, 509-11.)

*Back Impairment*:

On February 15, 2011, Dr. Sethi, conducted a consultative physical examination and noted moderate tenderness in the sacroiliac area on the right side of the lumbosacral spine, with slightly diminished range of movement. (Tr. at 27, 36, 315.) Examination of the cervical and thoracic spine was normal. (Id.)

Dr. Rogelio Lim, M.D., a reviewing state agency physician, completed a form Physical RFC Assessment, on which he opined that Claimant was capable of performing light exertional level work with occasional postural limitations except that she could never climb ladders, ropes, or scaffolds; and an avoidance of concentrated exposure to temperature extremes, vibration, and hazards. (Tr. at 36, 320-27.) Dr. Lim noted that Claimant's physical ability was limited due to her osteoarthritis of the knee and that her activities of daily living were normal. (Tr. at 36, 326-27.)

On June 7, 2011, Dr. Porfirio Pascasio, M.D., another reviewing state agency physician, completed a form Physical RFC Assessment, on which he opined that Claimant was capable of performing light exertional level work with occasional postural limitations except that she can never climb ladders, ropes, or scaffolds, and must avoid even concentrated exposure to temperature extremes and hazards. (Tr. at 36, 352-59.)

On November 7, 2011, Claimant reported to the Good Samaritan Clinic with reports of back pain. (Tr. at 389-91.) Claimant indicated that she had been cleaning and thought that she had strained her back when lifting. (Tr. at 389.) She said that she had started taking medications for her back and that she felt better. (Id.)

Claimant sought chiropractic treatment in October and November, 2011, for severe pain and muscle spasm in the middle of her back and under the right shoulder that had persisted for three weeks. (Tr. at 27, 406-08, 428.) Claimant reported the pain as constant in nature, characterized as dull, aching, throbbing, and burning. (Tr. at 27, 406, 428.) When she had a spasm, the pain was sharp. (Id.) She had

taken Flexeril twice a day for two or three years, which helped because she did not have spasms. (Id.) She reported that the pain was less when sitting, but still hurt if she sat too long. (Id.) She reported that she felt a little better on October 21, 2011. (Tr. at 27, 406.)

A lumbar spine x-ray on December 22, 2011, revealed mild degenerative changes throughout the lumbar spine. (Tr. at 27-28, 369.)

The record reflects treatment notes from Nurse Practitioner, Sandy Swisher at the Ritchie Regional Health Center from December 16, 2011, through August 6, 2012. (Tr at 429-521.) Claimant was first seen on December 16, 2011, and December 21, 2011, and complained of and was assessed with backache. (Tr. at 461-63, 470.) She was prescribed a 30-day supply of Mobic 15mg. (Tr. at 463.) On May 3, 2012, Claimant was assessed with backache. (Tr. at 446.) Claimant was continued on her Flexeril 10mg and Mobic 15mg was prescribed. (Id.) On July 9, 2012, Claimant called the office and requested to try a pain patch for degenerative back pain. (Tr. at 442.) An appointment was scheduled and on August 6, 2012, Claimant reported that her back pain was worse and requested a refill of Vicodin. (Tr. at 429.) Examination of her spine revealed no abnormalities, tenderness on palpation, or muscle spasm. (Tr. at 430.) She was assessed with backache and Vicodin was not refilled at that time. (Id.) Claimant was advised that if she really was in pain, then she needed to see a pain management specialist. (Id.)

On August 28, 2012, Dr. Barbara L. McNeil, of McNeil Chiropractic Health Center opined that Claimant was incapable of performing lifting in excess of 15 pounds occasionally or up to 10 pounds frequently. (Tr. at 522.) She further opined that Claimant required a sit/stand option at her discretion, depending on how she felt through her middle and lower back on any particular day. (Id.)

Claimant's Challenges to the Commissioner's Decision.

Claimant first alleges that the ALJ's decision is not supported by substantial evidence because the ALJ erred in assessing the impact of her mental health conditions and other non-exertional limitations on her ability to perform her past relevant work. (Document No. 10 at 5-8.) In arguing,

Claimant first asserts that the ALJ erred in giving little weight to the opinion of the state agency evaluating consultant, Dr. Bettoli. (Id. at 5-6.) Claimant notes that the ALJ found that Dr. Bettoli's opinions were inconsistent with treatment evidence that demonstrated her symptoms were controlled with medication. (Id. at 6.) Claimant agrees that when she stopped working, her symptoms were controlled with medication. (Id.) She asserts, however, that Dr. Bettoli opined that her condition would worsen if she had to resume work similar to what she was doing. (Id.) Claimant further asserts that contrary to the ALJ's finding, this opinion is not inconsistent with the treatment evidence that indicated her symptoms were controlled when she was not working. (Id.)

Claimant next asserts that the ALJ failed to acknowledge her treatment history in determining whether depression and adjustment disorder were severe impairments. (Id. at 6-7.) Citing Justice O'Connor's concurring opinion in Bowen v. Yuckert, 482 U.S. 137 (1987), Claimant asserts that pursuant to SSR 85-28, only a *de minimis* standard applies at step two of the sequential analysis. (Id.) Claimant asserts that the ALJ failed to consider Claimant's treatment history with Dr. Humphrey and his diagnoses. (Id. at 7.) She also asserts that the ALJ failed to acknowledge that Claimant's concentration was "somewhat deficient," which exceeds the *de minimis* standard. (Id.) Claimant contends that the ALJ considered only treatment notes from 2011, and therefore, failed to consider her mental health impairment over time, in violation of Listing 12.00(D)(2). (Id.) Finally, Claimant asserts that the ALJ failed to consider any non-exertional limitations when he assessed her RFC. (Id. at 7-8.) She further asserts that the ALJ failed to assign any limitations based on her back pain, which was found to be a severe impairment. (Id. at 8.) Claimant asserts that these reasons constitute reversible error. (Id.)

Claimant next alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider any non-objective evidence in assessing her RFC. (Document No. 10 at 8-9.) Specifically, Claimant asserts that the ALJ failed to consider any of the seven factors set forth in SSR 96-7p. (Id.)

In response, the Commissioner asserts that substantial evidence supports the ALJ's findings that Claimant could perform her past relevant work as generally performed. (Document No. 11 at 5-8.) The Commissioner asserts that Dr. Bettoli's opinion "is not the ringing endorsement of disability [Claimant] claims it to be." (Id. at 6.) The Commissioner notes that Claimant's reports to Dr. Bettoli primarily related to her physical ailments and that her job required her to travel a lot and required her to be on the road for weeks at a time. (Id.) She notes that Claimant testified that driving was the hardest part of her job. (Id.) The Commissioner further notes that the ALJ acknowledged Claimant's inability to perform her past work that involved a lot of driving and staying in hotels. (Id.) However, the ALJ found that Claimant was capable of performing her past work as it is generally performed, which does not require the traveling that was troubling for Claimant. (Id.) In Reply, Claimant emphasizes that Dr. Bettoli's opinion was made in reference to Claimant's mental impairments and not in reference to her physical impairments. (Document No. 12 at 1-2.)

The Commissioner further asserts that the ALJ's decision that Claimant did not suffer from a severe mental impairment is supported by substantial evidence. (Document No. 11 at 6.) The Commissioner notes that Claimant did not receive any formal treatment for mental impairments, rather she received only medication through her family physician. (Id.) The Commissioner further notes that her mental conditions did not impair her ability to work in the past and her mental condition did not deteriorate over time. (Id.) Accordingly, the Commissioner contends that Claimant's mental impairments were not severe. (Id.) Finally, the Commissioner asserts that contrary to Claimant's argument, her family physician did not place any mental work-related limitations on her as a result of her symptoms and complaints, and therefore, there were no further non-exertional limitations for the ALJ to assess. (Id.)

Regarding Claimant's back complaints, the Commissioner asserts that the ALJ amply accounted for the complaints that were supported by the record. (Document No. 11 at 8.) The Commissioner notes that Claimant's treating physician failed to place any work-related limitation

9

resulting from either physical or mental complaints. (Id.) Furthermore, the December, 2011, lumbar spine x-ray showed only mild degenerative changes. (Id.) Moreover, the Commissioner notes that the two state review agency physicians opined that Claimant was capable of performing light work. (Id.) Accordingly, the Commissioner contends that the ALJ properly accommodated any limitations by restricting Claimant to sedentary work. (Id.) In Reply, Claimant asserts that the ultimate conclusion of sedentary work reached by the ALJ is irrelevant. (Document No. 12 at 2.) Claimant contends that pursuant to SSR 96-8p, the ALJ was required and failed to provide a thorough discussion and analysis of the objective medical and other evidence and set forth a logical explanation of the effects of the symptoms, including pain, on her ability to work. (Id.) Claimant contends that the ALJ's error is reversible. (Id.)

Finally, Claimant alleges that she should have been awarded benefits under Grid Rule 201.06 at step five of the sequential analysis. (Document No. 10 at 9-10.) Claimant asserts that she was 62 years old at her alleged onset date, had at least a high school education or higher, and was limited to sedentary level work. (Id. at 9.) She notes that the VE testified that she had no transferable skills. (Id. at 9-10.) Pursuant to Grid Rule 201.06, Claimant asserts that she would have been found disabled at step five of the sequential analysis. (Id. at 10.) Accordingly, Claimant contends that the ALJ's decision should be reversed and remanded for further proceedings. (Id.) The Commissioner did not respond specifically to this argument.

Analysis.

1. Severe Impairment.

The undersigned first will address Claimant's argument that the ALJ erred in failing to find that her mental impairments were severe impairments. (Document No. 10 at 6-7.) To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2012). Basic work activities are the abilities and aptitudes necessary to do

most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. Id.; §§ 404.1521(b)(1)-(6); 416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original); see also SSR 85-28 (An impairment is considered not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

In his decision, the ALJ concluded that Claimant's mental impairments were controlled with medication, and therefore, did not constitute a severe mental impairment. (Tr. at 30-32.) The ALJ found that the Claimant's adjustment disorder with depressed mood and anxiety did not cause more than minimal limitation in her ability to perform basic work activities, and therefore, was non-severe. (Tr. at 32.) As the ALJ found, the evidence indicated that Claimant was treated on medication for her mental impairments since she was thirty years old and had treated for depression since 2005. (Tr. at 30.) Her medication was changed periodically for minor side effects and her mental conditions were controlled on the medication. Though she reported difficulty concentrating and with her memory, Dr. Bettoli opined that she had adequate immediate memory, intact remote memory, and only moderately deficient recent memory and somewhat deficient concentration. (Tr. at 31, 330-31.) Dr. Bartee opined

11

that Claimant had only mild difficulties maintaining concentration, persistence, or pace. (Tr. at 32, 344.) Thus, although Claimant had a history of mental health treatment, the record reflects that her symptoms have been controlled for years with medication and there is no indication that her condition has deteriorated. Contrary to Claimant's allegations, there is no indication that her symptom of "somewhat deficient concentration," as assessed by Dr. Bettoli constituted a severe impairment in light of the no more than moderately deficient memory and the fact that the ALJ gave Dr. Bettoli's opinions little weight. Accordingly, the undersigned finds that the ALJ's decision is supported by the substantial evidence of record.

2. <u>Opinion Evidence</u>.

Claimant next alleges that the ALJ erred in failing to give greater weight to the opinion of the state agency medical source, Dr. Bettoli. (Document No. 10 at 5-6.) Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2012). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." <u>Id.</u> §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of

an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2012). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

      The ALJ gave little weight to Dr. Bettoli's opinions because they were inconsistent with the treatment evidence that showed Claimant's symptoms were controlled with medication. (Tr. at 31.) As the ALJ noted, Dr. Humphrey, Nurse Swisher, and Nurse Lott observed and noted that Claimant's mental conditions improved and remained stable with medication. None of these three providers, including Dr. Humphrey, who was her primary care provider for a number of years, placed any mental-related limitations on Claimant. Furthermore, Claimant reported to Dr. Betolli that her work was very stressful, that she stayed on the road for weeks, and that she stayed exhausted. The ALJ found that Claimant could perform her past relevant work as generally performed that did not require the traveling that was so troubling to Claimant. There was no indication that Claimant quit her prior job due to purely mental limitations. Rather it was due to the stress and exhaustion from the travel and for other physical reasons. Given that there were no significant mental-related limitations for the reasons she was unable to perform her past work, Dr. Betolli's opinion that her condition would significantly worsen if placed in a position where she had to resume some semblance of her former job really is not relevant to a mental work capacity assessment. The ALJ therefore, gave Dr. Betolli's opinion little weight. In view of the substantial evidence of record, the undersigned finds that the ALJ's decision is supported by substantial evidence.

3. <u>Pain and Credibility</u>.

Claimant also alleges that the ALJ failed to consider non-objective evidence pursuant to SSR 96-7p. (Document No. 10 at 8-9.) As part of the pain and credibility analysis, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2012). Claimant alleges that the ALJ failed to take into account any of these factors in assessing her RFC. Contrary to Claimant's allegations, the ALJ's decision clearly indicates that the ALJ considered these factors. (Tr. at 32, 34-36.) The ALJ summarized Claimant's activities of daily living early in his decision (Tr. at 32.) and concluded that at times, Claimant greatly minimized them without any basis for doing so. (Tr. at 36.) The ALJ summarized Claimant's testimony, which included her alleged pain and its location, frequency, and duration. (Tr. at 34.) The ALJ then assessed each area of pain of which she complained and considered

the nature of the pain, the treatment and the effectiveness of treatment, the side effects of treatment, and so forth. (Tr. at 34-36.) The ALJ specifically noted that there were no side effects which would interfere with the performance of Claimant's past relevant work as generally performed. (Tr. at 35.) Accordingly, the undersigned finds that the ALJ clearly set forth in his decision his consideration of the factors under 20 C.F.R. § 404.1529(c)(3), and that Claimant's argument to the contrary is without merit.

4. The Grids.

Finally, Claimant alleges that the ALJ erred in failing to find at step five of the sequential analysis that she was disabled pursuant to the Grids. (Document No. 10 at 9-10.) As stated above, at step five of the sequential analysis, the Commissioner bears the burden of proving that the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education, work experience, skills, and physical shortcomings. 20 C.F.R. §§ 404.1520(f); 416.920(f) (2012). One way to meet this burden is through the use of the grids. The Regulations establish "grids" which "take administrative notice of the availability of job types in the national economy for persons having certain characteristics, namely age, education, previous work experience, and residual functional capacity." Grant v. Schweiker, 699 F.2d 189, 191-92 (4th Cir. 1983); see generally 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, §§ 200.00-204.00 (2012). Each grid considers the strength or "exertional" component of a claimant's disability in determining whether jobs exist that claimant could perform in light of the vocational factors. Grant, 191-92; 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, §§ 200.00-204.00 (2012). In a case where the claimant has only exertional impairments, the grids may be applied and vocational expert testimony is not required. See Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1990).

The Regulations describe both exertional and nonexertional limitations. An exertional limitation is one which manifests itself by limitations in meeting the strength requirements of a job. See 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, § 200.00(e) (2012); Gory v. Schweiker, 712 F.2d

15

929, 930 (4th Cir. 1983). A nonexertional limitation is a limitation that is present regardless of whether the claimant is attempting to perform the physical requirements of a job, and would include mental retardation, mental illness, blindness, deafness, or alcoholism. Id. Nonexertional limitations are "present at all times in a claimant's life, whether during exertion or rest." Gory, 712 F.2d at 930. "When a claimant suffers from exertional limitations and the facts of his vocational profile meet all the criteria of a particular rule in the tables of Appendix 2, that rule directs the conclusion to be drawn [whether the claimant is disabled or not disabled]." Id. When a claimant has both exertional and nonexertional limitations, the grids' rules are not conclusive, and may only serve as guidelines for decision. See Gory, 712 F.2d at 931; 20 C.F.R. Chapter III, Pt. 404, Subpt. P, App.2, § 200.00(e)(2) (2012). In a case where the claimant has only exertional impairments, the grids may be applied and vocational expert testimony is not required. See Hays v. Sullivan, 907 F.2d 1453, 1458 (4th Cir. 1990). The Fourth Circuit has recognized "that not every nonexertional limitation or malady rises to the level of a nonexertional impairment, so as to preclude reliance on the grids." Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989). The proper inquiry "is whether the nonexertional condition affects an individual's residual functional capacity to perform work of which he is exertionally capable." Id. In this matter, the undersigned finds that the ALJ did not err in failing to apply the grids. The ALJ made a decision at step four of the sequential analysis that Claimant was capable of returning to her past relevant work, and therefore, was not required to reach a decision at step five of the sequential analysis.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 10.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 11.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: August 27, 2014.

R. Clarke VanDervort
United States Magistrate Judge